IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ABE CORONADO, DIANE ARVEY, and )
MELANIE BROWN,                 )
                               )
                Plaintiffs,    )          No. 6:11-cv-6083-AA
                               )
        v.                     )          O R D E R
                               )
OREGON DEPARTMENT OF CORRECTIONS,)
JEAN HILL, MARTY IMHOFF and    )
KENNETH NEFF and ANDRE DUNN, in )
their individual and official  )
capacities,                    )
                               )
                Defendants.    )
_____)

AIKEN, Chief Judge:

Plaintiffs bring this action alleging violation of rights to equal protection and due process, violation of the First Amendment and state constitutional rights to free speech and association, interference with contractual relationships, and whistleblower claims. Defendants seek summary judgment as to all claims.

Plaintiffs have conceded or withdrawn their substantive due process claim and state law claims. The remaining claims are: (1)

plaintiff Melanie Brown's equal protection claim; (2) plaintiff Brown's free speech and petition claim; and (3) all plaintiffs' association rights claims.[1]   In addition, defendant the Oregon Department of Corrections has already been dismissed as to these remaining claims.  <u>See</u> Order dated June 30, 2011 (#22) at p. 2.


<u>BACKGROUND</u>

Plaintiff Brown is a lesbian and in a registered domestic partnership.  Brown began work for Step Forward Activities in February of 2006.  Step Forward Activities is a private employer and a non-profit agency that works with developmentally disabled adults in training them to become productive members of society.  For her first year with Step Forward Activities, Brown worked in the private sector in respite care and with the developmentally disabled

The Oregon Department of Corrections hired Step Forward Activities to train inmates at the Powder River Correctional Facility (PRCF) in toner cartridge operations and to help place inmates in private sector jobs upon release.  Starting in March of 2007, Brown began work at the PRCF toner cartridge facility as a cartridge repair supervisor.  Step Forward Activities employees at the PRCF were required to adhere to Oregon Department of Corrections (ODOC) policies.

---

[1]Plaintiffs' response fails to address many of the factual assertions in the amended complaint applicable to the remaining claims such as waste, fraud and abuse issues related to their association claim.  The court concludes that plaintiff has dropped such claims.  Additionally, plaintiffs fail to present an issue of fact as to the claims and issues not addressed, demonstrating the appropriateness of summary judgment as to those claims.

In December of 2008, ODOC determined that Brown violated its policies by allowing inmates to see materials on a computer concerning the Amanda Knox murder trial,[2] and showing a photograph of topless women to an inmate and another officer.    In relation to the investigation into the showing of murder trial materials, Brown accused defendant Andre Dunn of putting her job at risk based on her sexual orientation.[3]

In June of 2010, an inmate filed a grievance against Brown asserting she played some rap and hip hop music and said it was black music for the inmate.  The inmate further asserted that when he objected, Brown played Maria Carey and said "she's only half black, is that okay?"  In July of 2010, another inmate complained that Brown discusses sexual orientation with inmates. During the subsequent investigation, Dave Sutton, a fellow employee of Step Forward Activities, stated that he witnessed Brown over a three year period tell inmates she was gay and that they better not mess with her; asked inmates who "pitches" and who "catches"; and asked grumpy inmates if they "dropped the soap in the shower?" or "did you not get to snuggle with your cell mate?"  Sutton also confirmed the black music comments and heard Brown call the grieving inmate a "rat."  Sutton also stated

---

[2]As a result of this incident and investigation, Brown made her sexual orientation known when she became upset and yelled, "if I find out this is because I am a lesbian, I'm going to be pissed." The incident led to further training in ODOC security practices.

[3]Dunn apparently reported other security violations by Brown, but an employee named Melvin Conaway reported the showing of the murder trial news clip to defendant Kenneth Neff.  After the investigation into the incident, plaintiff Brown agreed that she had no reason to suspect Dunn of wrongdoing and that her comments about Dunn were unprofessional, groundless and inappropriate.

his belief that Brown is a pathological liar. In addition, other inmates alleged that Brown made statements that other inmates were "prison gay," "cross dressers," or "sucked cock."

As a result of the above violations, defendant Kenneth Neff, the operations manager at PRCF, met with Step Forward Activities management personnel and informed them that the administration of the Department of Corrections decided to permanently deny Brown access to the PRCF facilities including the cartridge building facilities. Gene Button, executive director at Step Forward Activities, decided to terminate Brown's employment, effective July 19, 2010, because her banishment from the facility prevented her from being able to do her job as outlined in her job description.[4]

Plaintiff Abe Coronado began working for the ODOC at the Eastern Oregon Correctional Institute on March 2, 1992, and that same year he transferred to PRCF. Defendants Neff and Jean Hill supervised Coronado.

Coronado acknowledges he was disciplined and reprimanded many times during his tenure at PRCF for offenses including ethics violations, damaging a bus and misrepresenting the facts in the subsequent investigation, antagonizing a fellow officer and not being truthful during the subsequent investigation, improper use of the e-mail system, logging another officer off at the officer's assigned work station against his will, ignoring on-duty radio calls from

---

[4]At the time, Step Forward Activities had no job openings outside the prison. When new positions became available, Brown did not apply for any.

defendant Dunn (the acting sergeant at the time), and conducting his own investigations (against instructions) against Dunn and others. Staring with his 2007-08 performance evaluation, Coronado began receiving does not meet expectations in the area of professionalism. In his 2008-09 evaluation, Coronado failed to meet expectations in four of the six categories including health and safety.

On May 11, 2010, ODOC commenced a pre-dismissal process.[5] Coronado declined an opportunity for a hearing, and on May 27, 2010, ODOC terminated his employment.  The termination followed an investigation in which ODOC determined that Coronado: (1) used state e-mail to keep negative notes  about Officers Dunn and other officers; (2) used state e-mail to accuse Officer Dunn, primarily, of wrongdoing (preceded by negative "book keeping" notes he wrote to himself); (3-4) initiated investigations about which he had no direct information, and about which he made accusations with incorrect hearsay information; (5) despite a warning from defendant Imhoff regarding harassment and Director Max Williams about a respectful workplace, continued to use the state e-mail system to keep negative notes about employees; (6) despite demonstrating an understanding of appropriate and respectful complaint processes to address operational concerns, engaged in the numerous violations noted above; (7) frequently made disparaging comments about PRCF management in state e-mail about matters that did not affect him, about which he had no direct information, and about which he pressed with incorrect hearsay information; and (8-9)

---

[5]A pre-dismissal notice had issued to Coronado in January of 1998, but he was not discharged at that time.

displaying good memory about distant incidents when the investigation began, but further into the investigation professing inability to recall.

Plaintiff Diane Arvey began work for the ODOC in 2000. Arvey began work at PRCF in 2003. Defendants Neff and Hill supervised Arvey.

Arvey received letters of reprimand in 2004 and 2007. On June 2, 2010, ODOC reduced Arvey's pay by one step for six months resulting in a monetary sanction of about $1,000. The discipline followed an investigation in which it was determined that Arvey: (1) made disparaging and untrue statements about officer Dunn and another officer;[6] (2) was uncooperative and evasive when interviewed about the disparaging and untrue statements; (3) give an untrue statement about another incident; (4) attempted to get management to take action against Dunn despite having no direct information; (5) discussed an investigation with other staff despite agreeing not to; (6) used official e-mail to discuss an investigation with her family and difficulties with Dunn making it a matter of public record and putting the department in a bad light; (7) used work e-mail 43% of the time on non-work related items; (8) after deciding that the stern directive from ODOC Director Max Williams about e-mail applied to her, decided tell her family members to cease e-mailing to her work e-mail account, but within 10 days sent out another note saying "You can email me now," and the personal e-mail traffic resumed as it had been; (9)

---

[6]The 2007 letter of reprimand also involved similar conduct.

repeatedly spoke badly about Dunn in e-mails to family prompting disparaging comments back; (10) used e-mail to give family specific information about an inmate including information available only to PRCF staff; (11) used e-mail to family and friends to express disdain for supervisor Neff; (12) used e-mail to speak in a negative and condescending manner about inmates in her charge; and (13) used e-mail to complain about the work habits of co-workers she directed, but did not make an effort to correct the behaviors demonstrating a willingness to make official complaints about Dunn only.    Arvey continues to work at the PRCF.

Plaintiffs contend that defendant Dunn, who is the local president of the American Federation of State County and Municpal Employees local 1878 (AFSCME), used his union political clout in Salem to avoid working and allow his top union buddies not to work, to undermine the New Directions program, to refuse to comply with PRCF post orders and the ODOC code of conduct, and to cause the discharge or removal of staff who oppose him.

New Directions is a drug and alcohol treatment program in which inmates spend eight hours a day working and eight hours in counseling programs.    The toner cartridge program operated by Step Forward Activities is one of the work programs within the New Directions program.  Plaintiffs assert that Dunn and his "gang" of union members undermined the New Directions program and engaged in actions to prevent inmates from doing New Directions homework.

DISCUSSION

A.    Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides
that "[n]o state shall ... deny to any person within its jurisdiction
the equal protection of the laws." U.S. Const., amend. XIV, § 1. This
"is essentially a direction that all similarly situated persons should
be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S.
432, 439, (1985). To establish a section 1983 equal protection
violation, plaintiff must show that the defendants, acting under color
of state law, discriminated against her as a member of an identifiable
class and that the discrimination was intentional or resulted from
deliberate indifference. Flores v. Morgan Hill Unified Sch. Dist.,
324 F.3d 1130, 1134 (9th Cir. 2003). Plaintiff Brown is a member of
a protected class based on her sexual orientation. Id. at 1134-35.

Brown's equal protection claim arises in an unusual context in
that she was not employed by ODOC. However, because she was working
within ODOC facilities and subject to ODOC policies while working at
the PRCF, it is appropriate to compare the disciplinary actions taken
against plaintiff and non-class member employees of ODOC as well as
employees of Step Forward Activities. Accordingly, the McDonnell
Douglas test is helpful to determine whether the actions taken against
Brown were in retaliation for her membership in a protected class.

Under McDonnell Douglas, unlawful discrimination is presumed if
the plaintiff can show that "(1) she belongs to a protected class, (2)
she was performing according to her employer's legitimate

expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998).

Plaintiff contends that defendant Dunn harassed her by calling her a "dyke" and a "fucking faggot," engaged in other hostile acts, and caused defendant Neff to deny her access to the PRCF. Brown further argues that defendant Hill caused her to be disciplined for objecting to Dunn's behavior and allowed Dunn's behavior to continue.

Plaintiff does not discuss any actions taken by defendant Imhoff demonstrating discrimination and summary judgment is granted as to the equal protection claim against defendant Imhoff. In addition, plaintiff fails to present any evidence that defendant Hill participated in the decision to exclude or that defendant Hill condoned the statements allegedly made by Dunn.[7] Accordingly, defendant Hill is entitled to summary judgment as to Brown's equal protection claim.

As noted above, plaintiff does belong to a protected class for purposes of the equal protection clause. The exclusion from the PRCF, in light of plaintiff's job duties with Step Forward Activities, is akin to an adverse employment decision. While plaintiff offers some hearsay evidence, as well as her own opinion, that she was good at her job and respected by the inmates, she fails to refute the evidence

---

[7]Plaintiff does assert that Hill told food service coordinators to stop talking about Dunn, but there is no connection between this act and Brown's sexual orientation. Moreover, Brown admits she is not aware that Hill did anything to get her discharged.

that Neff determined, after an independent investigation conducted by the human resources department, that she engaged in the inappropriate conduct noted in the investigation that resulted in the denial of access to the facility.  Moreover, Brown fails to connect Dunn to the action taken by Neff.

Brown asserts that Dunn and his "union buddies" were not disciplined.  However, Brown fails to show any undisciplined conduct similar to the conduct for which she was disciplined.[8]  There is no evidence to suggest that the decision-maker, defendant Neff, based his decision on plaintiff's membership in a protected class.  Accordingly, summary judgment is appropriate as to plaintiff Brown's equal protection claim.


B.    Free Speech and Petition

Plaintiff Brown alleges that she complained to others including defendant Imhoff, Neff and Hill regarding defendant Dunn's harassment based on her sexual orientation.  Brown also alleges that she complained to the Oregon Attorney General which resulted in an investigation.  As a consequence, Brown asserts that she suffered retaliation, for exercising her rights to free speech and petition, via exclusion from the PRCF.

---

[8]In addition, Brown presents no evidence that Step Forward Activities employees engaged in similar conduct but were not disciplined.  Dave Sutton was disciplined for failing to report Brown and received additional training, but was allowed to return to the facility.

Step Forward Activities employed plaintiff. However, the actions by Neff to exclude plaintiff from the PRCF exerted sufficient influence over Step Forward Activities' to permit application of the First Amendment to the decision by defendant Neff under the public employee balancing test. Cf., Clairmont v. Sound Mental Health, 632 F.3d 1091, 1101-02 (9th Cir. 2011) (nature of service provided by employee of private contractor to public court was analogous to that of employer and employee given the restrictions placed on private contractor's employees by public entity).

A state entity may not abuse its position as an employer to stifle the First Amendment rights its employees enjoy as citizens to comment on matters of public interest. Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009). In determining whether a public employee has suffered retaliation for asserting her First Amendment rights, courts evaluate:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

Id.

Plaintiff bears the burden on the first three areas of the inquiry. Id.

Plaintiff explains her claim in her response to the motion for summary judgment:

Brown, as the employee of a private state contractor, complained to Hill about Dunn's harassment based on her sexual orientation. Hill told her that, because of Dunn's pull on DOC headquarters in Salem, she would get her fired if word got back to Salem. Hill thanked Brown for not saying anything and as soon as Hill, a lesbian herself retired, Neff fired her. Again there is substantial circumstantial evidence in the form of Dunn's statements and behavior toward Brown that would permit a jury to find that Brown was discharged for resisting Brown's discriminatory and harassing behaviors based on her sexual orientation.

Response (#116) at p. 11.

Although the court is unable to find any support for the alleged statement attributed to defendant Hill or the connection to Neff's decision, the issue raised by plaintiff, at any rate, demonstrates a matter of personal concern in a purely employment context. Certainly a governmental entity engaging in discrimination is a matter of public concern. See, e.g., Alpha Energy Savers v. Hansen, 381 F.3d 917, 925 (9th Cir. 2004). However, statements of individual personnel disputes and grievances of no relevance to the public's evaluation of the performance of government agencies, is generally not of public concern. Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003). Brown did not address her concerns to the public, but rather she raised them internally as an employment issue of particular concern to her privately. There is no evidence of a cultural of discrimination based on sexual orientation at PRCF or that plaintiff attempted to address such concern on a broader basis.

Whether a public employee or contractor's expressive conduct addresses a matter of public concern is determined in light of the content, form, and context of the expressive conduct as revealed by

the whole record. Connick v. Myers, 461 U.S. 138, 148 n. 7, (1983).
Plaintiff Brown fails to direct the court to the particular speech,
addressed to a matter of public concern, she alleges resulted in
retaliation. Indeed, the only evidence in the record that plaintiff
went beyond PRCF to raise concerns, occurred during the investigation
of inmate grievances that led to her exclusion from the facility.  At
that time, plaintiff stated that she was upset "because most of the
questions were geared towards my sexual preference."  Transcript of
Hot Line Call of July 14, 2010 (attached to Declaration of J. Nicole
DeFever (#94) as Exhibit K).  The call did not involve complaints of
discrimination raised as a matter of public concern, but a personnel
dispute concerning complaints from inmates about her discussing the
very issue about which she was upset being asked.[9]  Because plaintiff
does not demonstrate she engaged in speech or petitioning on a matter
of public concern, summary judgment is granted against her First
Amendment claim.


C.   Association Rights

     All plaintiffs assert that defendants applied disparate
employment standards to protect AFSCME leadership by eliminating non-
supporters.  Specifically, plaintiffs assert that Dunn, as AFSCME
president, runs PRCF in concert with kowtowing managers and that

---

     [9]To the extent plaintiff Brown raises a First Amendment claim
based on petitioning, the failure to address a matter of public
concern also defeats the claim.  See Borough of Duryea, Pa. v.
Guarnieri, 131 S.Ct. 2488, 2501 (2011) (A petition filed with an
employer using an internal grievance procedure in many cases will
not seek to communicate to the public or to advance a political or
social point of view beyond the employment context).

plaintiffs were retaliated against by management for their association with each other to not support AFSCME.

Given the nature of association rights asserted, as with a free speech claim, plaintiffs must show that they addressed a matter of public concern.  See Merrifield v. Board of County Com'rs for County of Santa Fe, 654 F.3d 1073, 1082-83 (9th Cir. 2011) (the public concern requirement applies to a claim that a government employer retaliated against an employee for exercising the instrumental right of freedom of association for the purpose of engaging in speech, assembly, or petitioning for redress of grievances).

Plaintiff Brown was not a member of AFSCME and had no involvement with the union.  While Brown's work did involve implementing a portion of the New Directions program, she presents no evidence of causal link between her work and the actions of Neff in excluding her from the PRCF.  Moreover, Brown fails to present sufficient evidence that she associated with plaintiff's Coronado and Arvey in activities non-supportive of the union or that any such activity played a role in her exclusion.

Indeed, as noted above with her speech claim, Brown fails to specifically address the matter of public concern which allegedly resulted in the retaliation against her.  The same is true for plaintiffs Coronado and Arvey.  While plaintiffs assert that they opposed Dunn, it is not clear how they associated to achieve such objective and how they addressed it as a matter of public concern. Plaintiffs simply conclude that Dunn used his political clout to

undermine New Directions, to refuse to comply with the ODOC code of conduct, and to cause the removal of staff who opposed him. Plaintiffs then speculate that the reason for the discipline against them was because of Dunn's clout.   While plaintiffs point to anecdotal, and often hearsay statements, that Dunn and his "union buddies" benefitted from a double standard, plaintiffs fail to show a nexus between any alleged anti-union association and the adverse employment actions taken against them.   At best, plaintiffs demonstrate animosity between themselves and Dunn that simply does not rise to the level of a First Amendment violation.   See Brooks v. University of Wisconsin Bd. of Regents, 406 F.3d 476, 480 (9th Cir. 2005) (even if the plaintiffs' vague descriptions provided enough clues as to what was said, personnel struggle and infighting for control of a department is not a matter of public concern).

Defendant Dunn is not a manager of ODOC and is actually below Arvey in rank.   Any power that Dunn derives as president of AFSCME is not under color of law and therefore cannot form the basis of a section 1983 claim.   The lack of action under color of state law further demonstrates the private nature of the squabble between plaintiffs and Dunn.   Again, there is no evidence that defendants Hill, Imhoff or Neff had any idea of the alleged association by plaintiffs to not support Dunn's union and used their authority to discipline or discharge plaintiffs because of that association. Indeed, plaintiff Coronado was himself an AFSCME officer.

Simple speculation that plaintiffs' alleged association, for the purpose of opposing the union leadership, led to retaliation is insufficient to defeat a motion for summary judgment. Accordingly, defendants motion for summary judgment is granted as to plaintiffs' freedom of association claim.

<u>CONCLUSION</u>

For the reasons stated above, defendants' motions for summary judgment (#90 and #93) are granted and this action is dismissed.

DATED this ___22___ day of ~~December~~ January, 201~~3~~.

_____
Ann Aiken
United States District Judge